TIMOTHY D. COATNEY,

      **Plaintiff,**

                                   **Civil Action 2:19-cv-1950**
                                   **Judge Edmund A. Sargus, Jr.**
    **v.**                             **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Timothy D. Coatney ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Response in Opposition (ECF No. 13), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.      BACKGROUND

Plaintiff protectively filed his applications for a period of disability, disability insurance benefits, and supplemental security income on August 7, 2015. In his applications, Plaintiff alleged a disability onset of December 15, 2014. Plaintiff's applications were denied initially on

November 9, 2015, and upon reconsideration on March 14, 2016.   Plaintiff sought a hearing

before an administrative law judge.   Administrative Law Judge Jeannine Lesperance (the

"ALJ") held a hearing on December 5, 2017, at which Plaintiff, represented by counsel, appeared

and testified.   Vocational Expert Carl W. Hartung (the "VE"), also appeared and testified at the

hearing.   On July 30, 2018, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act.   On March 13, 2019, the Appeals Council denied

Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final

decision.   On May 15, 2019, the Appeals Council denied Plaintiff's request to reopen the prior

denial of his request for review.   Plaintiff timely filed this action.

In his Statement of Errors, Plaintiff advances two contentions of error.   First, Plaintiff

asserts that the ALJ failed to provide "good reasons" supported by substantial evidence for

discounting the opinions of his treating physician, Sunil V. Bhat, M.D. ("Dr. Bhat").   (Plaintiff's

Statement of Errors at 5-10, ECF No. 10.)   Plaintiff next asserts that the ALJ improperly

discounted the opinion of the consultative examiner, Robert D. Whitehead, M.D. ("Dr.

Whitehead").   (*Id.* at 11-13.)

## II.      RELEVANT MEDICAL RECORDS

### A.      Treating Physician, Sunil V. Bhat, M.D.

Dr. Bhat is Plaintiff's primary care provider who treated Plaintiff for, among other things,

HIV, peripheral neuropathy, COPD, and asthma.   (*See, e.g.,* R. at 993-96.)

On June 18, 2015, Dr. Bhat submitted a letter stating that Plaintiff is a patient under his

care suffering from "multiple chronic conditions which include disease of the Central Nervous

System and immunocompromised disorder."   (R. at 1100.)   He concluded that Plaintiff "is

unable to participate in meaningful work at this time." (*Id.*)

On March 21, 2016, Dr. Bhat provided a medical opinion in connection with Plaintiff's Paratransit Eligibility Application for the Central Ohio Transit Authority ("COTA"). (R. at 957-62.) Dr. Bhat stated that Plaintiff has an anxiety disorder, post-traumatic stress disorder, peripheral neuropathy, and asthma. (R. at 961.) He stated that Plaintiff suffers from intermittent anxiety attacks when in crowded public conditions, that weather changes exacerbate Plaintiff's asthma, and that Plaintiff's neuropathy "makes it difficult to wait for and be comfortable on [a] public bus." (*Id.*) Dr. Bhat opined that Plaintiff would need assistance with getting to or from the bus stop, getting on or off the bus, getting to where he is going from the bus stop, and at the location he is going to. (R. at 961-62.) He further opined that Plaintiff is limited in his ability to identify the correct bus stop/bus, as well as in his ability to ask for, understand, and carry out instructions to take a trip. (*Id.*)

On July 27, 2017, Dr. Bhat completed medical source statements. (R. at 1422-28.) He opined that in an eight-hour workday, Plaintiff can stand for two hours, fifteen minutes at a time; walk for one hour, fifteen minutes at a time; and sit for two hours, fifteen minutes at a time. (R. at 1422, 1427.) He opined that Plaintiff can occasionally lift up to five pounds and rarely lift up to twenty pounds. (R. at 1422, 1426.) Dr. Bhat found that Plaintiff can perform simple grasping and pushing and pulling, but no fine manipulation, and cannot use his feet for repetitive movements such as operating foot controls. (R. at 1422-23.) He opined that Plaintiff can rarely reach with his right arm and never reach with his left arm; can occasionally handle with his right and left hands; and occasionally finger with his right and left hands. (R. at 1426-27.) Dr. Bhat further concluded that Plaintiff cannot crawl, climb steps, or climb ladders, and can

occasionally bend, crouch/squat, and stoop.   (R. at 1423, 1427.)   He opined that Plaintiff is not

able to reach above shoulder level.   (R. at 1423, 1427.)   Dr. Bhat found that Plaintiff's

condition is likely to deteriorate if he is under stress and that he is likely to have two or more

partial or full day unscheduled absences per month due to his conditions, pain, and/or side effects

of medication.   (R. at 1423, 1427-28.)   Dr. Bhat stated that Plaintiff's musculoskeletal pain,

PTSD, anxiety, and migraines would be adversely affected by stress.   (R. at 1423.)   He

reviewed Plaintiff's medical records and treatment notes in completing the medical statements

and stated that his assessment was premised upon Plaintiff's diagnoses of migraines, hepatitis C,

Meniere's disease, HIV, anxiety, and PTSD.   (R. at 1428.)

## B.      Consultative Examiner, Robert D. Whitehead, M.D.

On February 8, 2016, Dr. Whitehead examined Plaintiff in connection with his Social

Security disability claim.   (R. at 1401-1404.)   Based on his examination, Dr. Whitehead

concluded that Plaintiff could "perform modified light duty jobs and/or mostly sedentary jobs."

(R. at 1404.)   Dr. Whitehead opined that Plaintiff "could not perform repetitive lifting, repetitive

bending and he likely would be limited to standing for 30 minutes at a time."   (*Id.*)

## C.      State-Agency Reviewing Physician

On February 24, 2016, on reconsideration of Plaintiff's claim, state-agency reviewing

physician Esberdado Villanueva, M.D., reviewed the record and assessed Plaintiff's physical

residual functional capacity ("RFC").   (R. at 750-51.)   Dr. Villanueva opined that Plaintiff can

occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand

and/or walk about six hours in an eight-hour workday, and sit for six hours in an eight-hour

workday.   (R. at 750.)   He found Plaintiff had no limitations in pushing and/or pulling

(including operation of hand and/or foot controls), other than as stated for his ability to lift and carry. (*Id*.) He further opined Plaintiff can frequently climb ramps/stairs, stoop, kneel, crouch, and crawl, and can occasionally climb ladders/ropes/scaffolds, and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (R. at 750-51.) He found that Plaintiff had no manipulative, visual, or communicative limitations. (R. at 751.)

## III. THE ADMINISTRATIVE DECISION

On July 30, 2018 the ALJ issued her decision. (R. at 19-34.) The ALJ first found that Plaintiff meets the insured status requirements through September 30, 2020. (*Id*. at 21.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2014, the alleged onset date. (*Id.* at 22.) At

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

step two, the ALJ found that Plaintiff had the severe impairments of "human immunodeficiency virus (HIV) with peripheral neuropathy; hepatitis C; migraine headaches; bilateral carpal tunnel syndrome; left mild ulnar neuropathy; minimal degenerative disc disease, cervical spine; chronic obstructive pulmonary disease (COPD)/emphysema/asthma; Meniere's disease; depressive disorder; anxiety disorder and post-traumatic stress disorder (PTSD)." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 23.) The ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could occasionally climb ramps and stairs, crawl, push/pull with the left lower extremity; or work in temperature extremes/humidity/atmospheric conditions; frequently stoop, kneel, crouch and handle/finger; never climb ladders, ropes, or scaffolds; and never work around hazards such as unprotected heights or exposure to moving mechanical parts. Mentally the claimant is able to perform simple routine tasks at an average pace, without strict time or production demands; can interact occasionally with coworkers and supervisors on matters limited to the straightforward exchange of information without teamwork or tandem work, but duties should not require interaction with the general public; and can adapt to occasional changes in duties that are explained.

(R. at 26.) In assessing Plaintiff's RFC, the ALJ considered the medical opinion evidence. The ALJ considered each of Dr. Bhat's opinions, assigning "no weight" to his June 18, 2015 opinion, "some weight" to his March 21, 2016 opinion, and "partial weight" to his July 27, 2017 opinions. (R. at 29-30.) The ALJ assigned "partial weight" to the opinions of consultative examiner Dr. Whitehead and consultative psychologist Michele Evans, Ph.D. (R. at 30-31.) Finally, the ALJ assigned "some weight" to the opinions of the state-agency reviewing physician and psychologists. (R. at 31.)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform his past work, he can perform jobs that exist in significant numbers in the national economy. (R. at 32.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 33.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.     ANALYSIS

As set forth above, Plaintiff raises two issues in his Statement of Errors (ECF No. 10). First, he asserts that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Bhat.   Second, he asserts that the ALJ improperly evaluated the opinion of the consultative examining physician, Dr. Whitehead.   The undersigned considers each of these contentions of error in turn.

### A.     The ALJ's Evaluation of Dr. Bhat's Opinions

According to Plaintiff, the ALJ failed to provide "good reasons" supported by substantial evidence for discounting the opinions of his treating physician, Dr. Bhat.   The Commissioner counters that the ALJ reasonably declined to give controlling weight to the extreme and/or unsubstantiated opinions of Dr. Bhat.   The undersigned agrees with the Commissioner and finds Plaintiff's first contention of error to be without merit.

The ALJ must consider all medical opinions that she receives in evaluating a claimant's case.   20 C.F.R. § 416.927(c).   The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis."   20 C.F.R. §

8

416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."   20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408.   If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."   20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.   *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004).   Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*.   Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."   20 C.F.R. § 416.927(c)(2).   Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."   *Friend v. Comm'r of Soc. Sec*., 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).   The United States Court of Appeals for the Sixth

Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As discussed above, the ALJ assigned "no weight" to the June 18, 2015 opinion of Dr. Bhat, "some weight" to his March 21, 2016 opinion, and "partial weight" to his July 27, 2017 opinions. (R. at 29-30.) For the reasons set forth below, the undersigned finds no error in the ALJ's consideration and weighing of Dr. Bhat's opinions.

### 1. Dr. Bhat's June 18, 2015 Opinion

With respect to Dr. Bhat's June 18, 2015 opinion, the ALJ explained her decision to assign it "no weight" as follows:

> . . . . On June 18, 2015, shortly after the claimant was released from the hospital for complaints of weakness, Dr. Bhat provided a letter providing in part that the claimant ". . .is unable to participate in meaningful work at this time" (Exhibit 5F). I give this opinion, insofar as it can be considered an opinion, no weight. While treating physicians are not required to provide function-by-function opinions, when they fail to offer specific functional limitations and simply conclude that a person is unable to work they forego the opportunity to provide evidence or an argument in support of their conclusions, which renders them less persuasive. Moreover, the final responsibility for determining if a claimant is "disabled" or "unable to work" is reserved for the Commissioner.

(R. at 29-30.)

The ALJ reasonably assigned "no weight" to Dr. Bhat's conclusory opinion that Plaintiff "is unable to participate in meaningful work at this time." First, the ALJ appropriately found that the issue of whether Plaintiff is "unable to work" is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). Dr. Bhat's opinion on the matter is therefore not entitled to any special significance. *See id.*; *see also Bass*, 499 F.3d at 511 (explaining that the conclusion of disability is reserved to the Commissioner and that "no 'special significance' will be given to opinions of disability, even if they come from a treating physician"); *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 800 (6th Cir. 2004) ("A treating physician's conclusory statement that a claimant is disabled is not controlling because the ultimate determination of whether a claimant is disabled rests with the Commissioner.").

Next, the ALJ reasonably declined to afford any weight to Dr. Bhat's conclusory opinion because he failed to offer specific functional limitations or provide evidence in support of his

conclusions.   An ALJ need not give controlling weight to a treating physician's opinion if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or if it is inconsistent with other substantial evidence in the record.   *See* 20 C.F.R. § 404.1527(c)(2). Here, the ALJ's analysis of the medical evidence, (R. at 26-29), and ultimate RFC assessment, (R. at 26), demonstrate that she found Dr. Bhat's conclusory opinion that Plaintiff was "unable to participate in meaningful work at th[e] time" unsupported by the record.   Indeed, the ALJ specifically considered that, with the exception of Plaintiff's June 2015 hospital visit (which occurred shortly before Dr. Bhat rendered this opinion) and when Plaintiff was acutely ill, the record typically demonstrates unremarkable findings.   (*See* R. at 29 (citing R. at 1131, 1181, 1363, 1403, 1405, 1443, 1500[2]; 1654; 1690[3]; 1779).)   Thus, the ALJ adequately explained her reasons for rejecting Dr. Bhat's June 18, 2015 opinion and those reasons are supported by substantial evidence.   *See, e.g.*, *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (holding that an ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation"); *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475–76 (6th Cir. 2008) (finding that the ALJ sufficiently explained his reasons for rejecting a treating physician's opinion where the ALJ "clearly stated that he was rejecting [the] opinion because it was not supported by the medical evidence—which the ALJ set forth in great detail throughout his opinion—and the ultimate determination of disability is a matter reserved to the Commissioner").

---

2  The ALJ likely intended to cite to the next page in the treatment record, R. at 1501, which provides that Plaintiff had normal sensation, reflexes, coordination, muscle strength, and tone.
3  Here, the ALJ likely intended to cite to the previous page of the treatment record, R. at 1689, which provides that Plaintiff's bulk and tone were normal throughout and his strength was 5/5 throughout, unless otherwise specified.

### 2. Dr. Bhat's March 21, 2016 Opinion

The ALJ also reasonably considered and discounted Dr. Baht's March 21, 2016 opinion contained in Plaintiff's COTA paratransit eligibility application. The ALJ explained her decision to assign this opinion "some weight" as follows:

> . . . I have considered a number of forms and letters by the claimant's primary care and infectious disease provider, Sunil V. Bhat, MD (Exhibits 10E; 5F; 15F). Exhibit 10E is a Central Ohio Transit Authority (COTA) paratransit eligibility application. While Dr. Bhat is not a mental health specialist, I give this form some weight as it generally reflects consistent subjective complaints by the claimant as to his social anxiety, and which are accommodated in the assessed residual functional capacity by limiting the nature and extent of his social interactions. As for the comments with respect to the claimant's neuropathy making extended travel difficult, the record does not document consistent objective signs and findings of neuropathy, as most of the claimant's sensory examinations are entirely normal, as well as having normal motor/strength. Therefore, I do not adopt limits consistent with his reported inability to be "comfortable" waiting for or sitting on a public bus, nor does the record support that the claimant requires someone to assist him as noted on this form. While the claimant has had rides to and from the hospital at various times, he was noted in the hospital to have normal exams with no obvious ambulation or psychiatric problems that would preclude independent travel. It is notable that the form was signed on March 21, 2016, and the claimant's visit with Dr. Bhat on that day note the claimant reported feeling better having restarted his HIV medications with the very brief physical exam being entirely normal (Exhibit 19F/86, 88).

(R. at 29.)

Here, the ALJ reasonably declined to afford this opinion controlling weight on the grounds that it was not supported by the objective findings in the record and is inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as relevant considerations when evaluating a treating physician's opinion); *Blakely*, 581 F.3d at 406 ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.'" (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2,

1996))).

Substantial evidence supports the ALJ's assessment of Dr. Bhat's March 21, 2016 opinion. First, the ALJ reasonably concluded that the record does not support Dr. Bhat's opinion that Plaintiff's neuropathy would make extended travel difficult. The ALJ found that the record does not document consistent objective signs and findings of neuropathy, noting that most of Plaintiff's sensory examinations were normal and that he had normal motor and strength. Indeed, despite finding Plaintiff's neuropathy to be a severe impairment, the ALJ concluded that the record revealed only mild findings. (R. at 23 (explaining that she considered Plaintiff's mild bilateral carpal tunnel syndrome, mild left ulnar neuropathy, and mild degenerative disc disease of the cervical spine to "be severe in combination despite only mild findings" (citing R. at 1101-05, 1246, 1405, 1779)).) The ALJ also considered that although "[e]lectrodiagnostic testing has shown bilateral carpal tunnel syndrome and left mild ulnar neuropathy. . . the record does not document any further complaints or treatment for this and the claimant denied wearing wrist splints." (R. at 27.) The ALJ further noted that, when Plaintiff was not acutely ill, and with the exception of one hospital visit in June 2015, his physical examinations reveal unremarkable clinical findings, such as "good upper and lower extremity strength, normal gait, normal bulk and tone without atrophy or muscle spasm." (R. at 29 (citing R. at 1131, 1181, 1363, 1403, 1405, 1443, 1500; 1654; 1690; 1779).) These records support the ALJ's decision to discount Dr. Bhat's opined limitations regarding Plaintiff's neuropathy.

The ALJ also reasonably concluded that Plaintiff does not require someone to assist him at the level set forth in Dr. Bhat's opinion. The ALJ considered that although Plaintiff has had rides to the hospital at various times, hospital records note that he had "normal exams with no

obvious ambulation or psychiatric problems that would preclude independent travel." (R. at 29.) For example, elsewhere in her decision, the ALJ considered that when Plaintiff was hospitalized for non-psychiatric issues, he was "noted to display appropriate mood, affect and behavior," (R. at 28 (citing R. at 1231, 1321, 1642, 1805)), and that when he was not acutely ill, his physical examinations revealed unremarkable clinical findings, (R. at 29 (citing R. at 1131, 1181, 1363, 1403, 1405, 1443, 1500; 1654; 1690; 1779)). The medical records also typically describe Plaintiff as having normal ambulation and gait. (*See, e.g.*, R. at 1072, 1084, 1160, 1162, 1168, 1636.) Additionally, although the ALJ gave some weight to Dr. Bhat's opinion regarding Plaintiff's social anxiety by limiting the nature and extent of his social interactions in his RFC, she appropriately noted that Dr. Bhat is not a mental health specialist. *See Wilson*, 378 F.3d at 544 (explaining that "the specialization of the treating source" is a relevant factor in weighing a treating source's opinion).

The ALJ next appropriately considered that Dr. Bhat's March 21, 2016 opinion was inconsistent with his treatment notes from the same day. On the day Dr. Bhat filled out the paratransit eligibility form, Plaintiff "reported feeling better having restarted his HIV medications" and his physical examination was "entirely normal." (R. at 29 (citing R. at 1542, 1544).) Based on the foregoing, the ALJ reasonably discounted Dr. Bhat's March 21, 2016 opinion.

Moreover, Dr. Bhat's March 21, 2016 opinion is vague and is not stated in vocationally relevant terms, and Plaintiff fails to identify any additional functional limitations that should have been included in his RFC based on the opinion. For this additional reason, the undersigned finds no error in the ALJ's analysis of Dr. Bhat's March 21, 2016 opinion.

In summary, the ALJ provided good reasons supported by substantial evidence for discounting Dr. Bhat's March 21, 2016 opinion. Although Plaintiff cites to some medical records noting abnormal signs and symptoms, (Pl.'s Statement of Errors at 9, ECF No. 10), the ALJ's findings were within the ALJ's permissible "zone of choice" and the Court will not re-weigh the evidence. *See Blakley*, 581 F.3d at 406.

### 3. Dr. Bhat's July 27, 2017 Opinion

The undersigned likewise finds no error in the ALJ's consideration and weighing of Dr. Bhat's July 27, 2017 opinions. The ALJ explained her decision to assign "partial weight" to the opinions as follows:

> Finally, Dr. Bhat filled out representative-supplied medical source statement forms (Exhibit 15F). I give these only partial weight. The forms are internally inconsistent. For example, with respect to manipulative limitations, on page two the provider indicates that he can use his hands for repetitive grasping and pushing and pulling but not for fine manipulation, then on page five he indicates that the claimant cannot reach at all in any direction with the left arm and only rarely with the right, and only occasionally handle and finger bilaterally. Clearly one must be able to reach more than none or rarely to engage in "repetitive" pushing, pulling, and handling. Moreover, Dr. Bhat does not provide sufficient clinical and laboratory data to support the conclusions, merely a statement . . . that the claimant is treated for certain conditions. The opinions contained in the forms overall are not supported by his examinations or by other objective signs and findings, as explained above. I adopted some limits consistent with the opinion, such as some postural limits and no ladders. Otherwise, the file particularly the claimant's mostly benign physical and mental examinations, including Dr. Bhat's documented clinical findings, does not support Dr. Bhat's limitations, including but not limited to absenteeism, limiting the claimant to sit/stand and walk less than eight hours total, no foot controls at all and rare lifting of up to 20 pounds.

(R. at 30.)

Here, the undersigned finds that the ALJ appropriately declined to afford controlling weight to Dr. Bhat's July 27, 2019 opinions on the bases that they are unsupported by and inconsistent with the record and are internally inconsistent. *See* 20 C.F.R. § 404.1527(c)(2);

*Blakely*, 581 F.3d at 406.

First, the ALJ reasonably discounted Dr. Bhat's opinions on the basis that they are internally inconsistent. *See Ledford v. Astrue*, 311 F. App'x 746, 754 (6th Cir. 2008) (identifying internal inconsistencies as a proper basis for discrediting medical opinions). As the ALJ pointed out, Dr. Bhat stated on page 2 of his medical source statement that Plaintiff "can use his hands for repetitive grasping and pushing and pulling but not for fine manipulation, then on page five he indicates that the claimant cannot reach at all in any direction with the left arm and only rarely with the right, and only occasionally handle and finger bilaterally." (R. at 30 (referring to R. at 1423, 1426).) The ALJ noted that "[c]learly one must be able to reach more than none or rarely to engage in 'repetitive' pushing, pulling, and handling." (R. at 30.) Further, on page 2, Dr. Bhat indicated that Plaintiff could not use his hands for fine manipulation, but on page 5 states that Plaintiff can occasionally finger[4] bilaterally. (*Compare* R. at 1423 *with* R. at 1426.) Accordingly, the ALJ reasonably discounted Dr. Bhat's opinion because it was internally inconsistent.

Next, the ALJ reasonably discounted Dr. Bhat's extreme opinion because it is not supported by sufficient objective signs and findings in the record. As noted by the ALJ, Dr. Bhat failed to provide clinical and laboratory data to support his opinions and instead simply provided a statement of Plaintiff's medical conditions. (R. at 30.) The ALJ was not required to give significant weight to such conclusory opinions that lack supporting explanation. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) ("We have previously

---

4 The subject medical source statement defines "fingering" as "picking, pinching or otherwise working primarily with the fingers." (R. at 1426.)

declined to give significant weight to rudimentary [opinions] that lack an accompanying explanation."); *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2017) (explaining that conclusory opinions which provide "no supporting findings or records and consist[ ] largely of one word answers, circles, and check-marks" have been "characterized as 'weak evidence at best' that meets the 'patently deficient standard'" (citing *Hernandez*, 644 F. App'x at 475 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))).

The ALJ further concluded that Dr. Bhat's opinions "overall" are not supported by his examinations or other objective evidence in the record. (R. at 30.) The ALJ explained that Plaintiff's "mostly benign physical and mental examinations, including Dr. Bhat's documented clinical findings," fail to support Dr. Bhat's opined limitations, "including but not limited to[,] absenteeism, limiting the claimant to sit/stand and walk less than eight hours total, no foot controls at all and rare lifting of up to 20 pounds." (R. at 30.) The ALJ cited to various medical records throughout her decision that support her conclusion. For example, she noted that Plaintiff's HIV appears to be under control and asymptomatic, (R. at 29 (citing R. at 1457-1595)); Plaintiff's physical examinations have generally documented unremarkable findings when he is not acutely ill, including "good upper and lower extremity strength, normal gait, normal bulk and tone without atrophy or muscle spasm," (R. at 29 (citing R. at 1131, 1181, 1363, 1403, 1405, 1443, 1500; 1654; 1690; 1779)); Plaintiff's treatment has been routine and conservative in nature, (R. at 29); Dr. Bhat typically "fails to note any significant persistent abnormalities in [Plaintiff's] clinical examinations," (R. at 29 (citing R. at 992-1034; 1336-1366; 1457-1595)); and that despite complaints of "severe and unrelenting pain," Plaintiff is "typically described as being in no acute distress, which would not be expected were the claimant truly in

continuous incapacitating pain. . .,"   (R. at 29).   Thus, given the largely normal objective

findings in the record, and Dr. Bhat's failure to cite to specific signs or findings to support his

extreme opinions, the ALJ reasonably discounted Dr. Bhat's opinions.

In Plaintiff's Statement of Errors, he merely points to other aspects of the record that

support his alleged impairments.   For example, he cites to certain treatment notes from Dr. Baht

that identify subjective complaints of muscle cramps, joint pain, back pain, poor balance,

dizziness, increased frequency of headaches, and anxiety.   (Pl.'s Statement of Errors at 9, ECF

No. 10 (citing R. at 1476, 1485, 1499, 1526, 1548, 1552, 1555, 1571).)   He also points to Dr.

Bhat's physical examination notes, which on occasion revealed mild or moderate pain/distress,

musculoskeletal tenderness without crepitus over right middle-anterior ribs, and a positive

straight-leg raising test[5] with no spine or paraspinal tenderness.   (Pl. Statement of Errors at 9,

ECF No. 10 (citing R. at 1526, 1532, 1539, 1548, 1563).)   Plaintiff further cites to records from

other treatment facilities noting complaints and/or signs of left-sided weakness, numbness,

dizziness, vertigo, and symptoms involving the nervous system, (Pl.'s Statement of Errors at 9,

ECF No. 10 (citing R. at 1094, 1101, 1631,[6] 1643, 1653)), as well as abnormal findings

contained in consultative examiner Dr. Whitehead's report, including an antalgic but stable gait,

decreased range of motion in Plaintiff's lumbar spine, decreased sensation to light touch at his

right lateral thigh, and altered sensation in the right lower extremity, (Pl.'s Statement of Errors at

9, ECF No. 10 (citing R. at 1402-03)).   But the existence of some evidence in Plaintiff's favor

---

5  The undersigned notes that a straight-leg raise test was negative bilaterally during the
consultative examination.   (*See* R. at 1403.)
6  The same record indicates that Plaintiff reported "his weakness has dramatically improved"
since he was discharged from the hospital.   (R. at 1631.)

does not mean that the ALJ's decision to discount Dr. Bhat's opinion was not supported by substantial evidence. Even where evidence could support two different conclusions, "the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-CV-01078, 2018 WL 2422035, at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, 2018 WL 2416232 (May 29, 2018); *see also Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" (citation omitted)).

Furthermore, contrary to Plaintiff's assertion, the ALJ did not mischaracterize or ignore record evidence. Here, the ALJ discussed many of the abnormal findings in the record, including findings Plaintiff claims she ignored. (*See* R. at 27-31.) For example, she considered Plaintiff's complaints of migraines, dizziness, pain, and emotional distress (R. at 29), his June 2015 hospital visit for weakness (R. at 29-30), and Dr. Whitehead's findings that Plaintiff exhibit an antalgic gait, decreased lumbar range of motion, and decreased sensation in his right lateral thigh (R. at 30). The ALJ's factual findings reveal that she considered the record as a whole and did not mischaracterize or ignore medical evidence to support her assessment of Dr. Bhat's opinions. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (explaining that an ALJ need not address all the evidence in the written decision "so long as his factual findings as a whole show that he implicitly resolved such conflicts"); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Based on the foregoing, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in her consideration and weighing of Dr. Bhat's opinions. It is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.      The ALJ's Evaluation of Dr. Whitehead's Opinions**

Plaintiff next contends that the ALJ failed to explain why she discredited the opinions of consultative examiner, Dr. Whitehead.   The undersigned disagrees.

Although the "good reason" requirement does not apply where the medical source has not treated the claimant, *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010), "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of h[er] reasoning.'"   *Stacey*, 451 F. App'x at 519 (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995)).   Indeed, regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source.   20 C.F.R. § 416.927(c).   In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to a treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(c).

Contrary to Plaintiff's contention, the ALJ provided the following thorough explanation for why she assigned "partial weight" to Dr. Whitehead's opinion:

I considered the opinion of Robert D. Whitehead, MD, a licensed physician who examined the claimant at the request of the Bureau of Disability Determination. His opinion, set forth in Exhibit 13F, is the result of his own observations, examinations, muscle testing, and review of the medical evidence. Dr. Whitehead provided that . . . his "examination today would support [the claimant] could perform modified light duty jobs and/or mostly sedentary type jobs. He could not perform repetitive lifting, repetitive bending and he likely would be limited to standing for thirty minutes at a time." I give Dr. Whitehead's opinion partial weight. It is accepted that the claimant[ ] can perform a range of light work; however, the evidence of record and the clinical findings at this particular examination do not support a limit to sedentary work. Dr. Whitehead does not specify what is intended by "repetitive" bending. While the claimant complained of lumbar pain, as discussed above, he does not have evidence of a medically determinable lumbar impairment. At this particular examination, the claimant is noted to exhibit an antalgic gait, but most of his examinations throughout the record do not document gait disturbance. He also was noted to demonstrate a decreased lumbar range of motion and have diffuse tenderness, though there was no evidence of muscle spasm, he had negative straight leg raising and strength and sensation were maintained in the lower extremities, with the exception of some decreased sensation to the right lateral thigh. Moreover, as described in objective evidence above, when he has examinations that are performed in depth such as at the hospital, the claimant is noted to have normal motor with strength, sensation, etc. Overall, the record does not support limiting to standing only 30 minutes at a time.

(R. at 30.)

The undersigned finds no error in the ALJ's consideration and weighing of Dr. Whitehead's opinion, as she reasonably concluded that his opinion lacked supportability and consistency with the record as a whole. As a preliminary matter, the undersigned notes that Dr. Whitehead's statement that Plaintiff can perform "modified light duty jobs and/or mostly sedentary type jobs" is vague. As the Commissioner points out, it is not clear whether Dr. Whitehead intended the statement to be the most or the least Plaintiff can do. (Commissioner's Resp. in Opp'n at 13, ECF No. 13.) Nevertheless, the ALJ expressly accepted Dr. Whitehead's opinion that Plaintiff can perform modified light duty jobs, which is reflected in Plaintiff's RFC assessment, and rejected his opinion regarding "sedentary type jobs," finding that the evidence of

record and clinical findings do not support a limitation to sedentary work. (R. at 30.)

The ALJ also explained that she rejected Dr. Whitehead's opinion regarding "repetitive" bending because he did not explain what he meant by "repetitive" bending. Unlike "occasionally" and "frequently," "repetitive" is not a defined term in the Social Security Regulations. Dr. Whitehead's opinion fails to explain how often Plaintiff could bend or lift during a normal workday. Accordingly, the ALJ reasonably discounted the opinion.

The ALJ further explained that the objective evidence in the record does not support Dr. Whitehead's limitations, which include sedentary work, no repetitive bending and lifting, and standing for only thirty minutes at a time.[7] The ALJ first considered that Plaintiff does not have a medically determinable back impairment, a finding which Plaintiff does not challenge in his Statement of Errors. (R. at 30); (*see also* Pl.'s Statement of Errors, *generally*). She also considered that while Plaintiff exhibited an antalgic gait at the consultative examination, most of his examinations throughout the record do not reveal gait disturbance. (R. at 30); (*see, e.g.*, R. at 1072, 1084, 1160, 1162, 1168, 1636). In addition, the ALJ considered that although Dr. Whitehead noted Plaintiff to have decreased lumbar range of motion and diffuse tenderness upon examination, he had no muscle spasm or straight-leg raising and had normal strength and sensation, with the exception of some decreased sensation in his right lateral thigh. (R. at 30); (*see* R. at 1401-08). The ALJ also cited to her discussion of the objective evidence, wherein she considered that Plaintiff was typically noted to have normal motor, strength, and sensation. (R. at 30); (*see* R. at 29 (citing R. at 1131, 1181, 1363, 1403, 1405, 1443, 1500; 1654; 1690; 1779)).

---

[7] Although not addressed by the ALJ, the undersigned notes that Dr. Whitehead's opinion that Plaintiff "*likely* would be limited to standing for 30 minutes at a time" is vague and equivocal. (*See* R. at 1404 (emphasis added).)

Based on the foregoing, the undersigned finds that the ALJ adequately explained her decision to discount Dr. Whitehead's opinions.

Again, contrary to Plaintiff's assertion, the undersigned is not convinced that the ALJ ignored record evidence that supports Dr. Whitehead's opinion. As set forth above, the ALJ considered abnormal findings in the record, including those contained in Dr. Whitehead's report, and explained why she ultimately discounted Dr. Whitehead's opinions. The ALJ's findings were within her permissible "zone of choice" and the Court will not re-weigh the evidence. *See Blakley*, 581 F.3d at 406; *see also DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) (explaining that an allegation of "cherry picking" "is seldom successful because crediting it would require a court to re-weigh record evidence").

In summary, the undersigned finds no error in the ALJ's consideration and weighing of Dr. Whitehead's opinion. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

## VI.    DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s).    A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.    Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.    28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.    *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

  /s/ *Chelsey M. Vascura*

CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE